Swing, J.
This was an action in the court of common pleas by August Jutte & Company against the Cincinnati & Newport Bridge Company to recover the value of two barges of coal which were lost in- a collision with the south pier of the channel span of defendant’s bridge on December 2, 1896.
Judgment was recovered for the defendant on the trial in ■that court, and this action is prosecuted in this court to ■reverse said judgment. The main ground of error complained of is that the court erred in its charge to the jury. *423 The main facts in the case which are not controverted are as follows: The bridge company ih 1895 desired to reconstruct its bridge across the Ohio river between Oincinnati, Ohio, and Newport, Kentucky, and made application to the secretary of war for permission to do the same on June 18, 1896. The secretary of war granted said permission for the reconstruction of said bridge with certain conditions, which conditions are as follows:
“1st. That while the channel span is temporarily obstructed, no false work be permitted in the other spans of the bridge.
“2nd. That all of the false work in the channel span be removed and the channel be restored to navigation with the utmost rapidity.
“3rd. That the bridge company be required to publish notice of the proposed obstruction in the Pittsburgh, Cincinnati, Louisville, Memphis and St, Louis papers to give steamboat-men ample notice.”
These conditions were communicated to the bridge company by Major Heuer of the United States army, in charge of the Ohio river at Cincinnati, on the same day.
Before beginning the work, the bridge company gave the notice required under these conditions of its intention .to proceed to the reconstruction of the bridge.
On the 2nd of December, 1896, the day the barges were lost, the channel span was obstructed by piling and barges and false work, so that the channel, which had primarily been about four hundred feet wide, was then only one hundred and eighty-two feet wide. On said day there was in the river a stage of from twenty-nine to thirty feet of water.
With such a stage of water and the channel span narrowed to this extent it was dangerous and hazardous to navigate the channel span, especially so for coal boats with tows of barges.
On the morning of said day, at ten o’clock A. M,, the time when this accident occurred, span No, 5 of said bridge near the south aide thereof was obstructed by false works which had been placed there a few days before. The obstruction covered the entire span, and prevented boats from passing through it.
*424 When the main channel was obstructed and the water was high enough (as it was on said day), this span was the one used by boats, being comparatively free from danger,
On the first of December, the day before the accident,. Major Heuer, the United States officer in charge, visited the bridge, and finding the false work in span No. 5, gave orders for its immediate removal, but this order was not complied with until after the accident, to-wit: on the afternoon of December 2nd,
There is no evidence which tends to show that any member of the firm of Jutte & Company, or the officers in charge of the boat, had any knowledge that span No, 5 was obstructed on said day, although it does appear that members of the firm of Jutte & Company as well as the officers of the boat had knowledge that the bridge was being reconstructed and that the channel span was obstructed. Jn fact,, the officers of the boat, some weeks before, had passed with their boat through span No 5 and saw the obstruction in the channel span, and there is good reason to believe that both the officers of the boat and the members of the firm, some of whom were engaged in doing part of the work on the reconstruction of the bridge, had good reason to believe that it would be necessary in the course of the construction of the bridge that span No. 5 would have to be obstructed by false work as it was on this 2nd of December.
But there is nothing to show that either of them had any reason to apprehend that this span would be obstructed at this time. No notice was given that it would be or was obstructed, in the papers designated by the secretary of war, unless the notice published before the work was commenced can be considered such. The obstruction was placed there contrary to the conditions required by the secretary of war, and it remained there after it was ordered removed by Major Heuer, the United States officer in charge,
The high stage of water made it extremely dangerous to navigate the contracted channel span, and span No, 5 was under the circumstances the only safe and proper span to navigate, and it was the span used by boats for navigation under the conditions existing at that time,
The plaintiff’s tow boat “Rescue” came down the river *425 with three barges of coal in tow. It was shown that tow boats in charge of coal barges are very difficult to handle; they cannot stop in midstream or go against the current; the only way to stop them is to tie up to some wharf.
At the time of the accident there was what is called a coal boat rise in the river, and .a' fleet of coal boats was coming down the river, the Rescue being among the first.
A mile and a half above the bridge the river makes a short bend and the bridge comes into full view.
When the Rescue turned this bend, there was nothing in the way to obstruct a view of the bridge. It was ten o’clock in the morning, and the day was bright and clear. The boat was placed in position to pass through span No. 5, and this false work in this span could have been seen, if not for the whole of the mile and a half, at least far enough up the river for the boat to have been placed in position to run the channel span.
The evidence clearly shows that after the false work was discovered by the officers in span No. 5, every proper effort was made by them to pass through the channel span.
It clearly appears from this statement of facts that the bridge company was guilty of negligence in obstructing span No, 5, and this is true whether the obstruction was authorized by the grant of the secretary of war or not. A coal fleet was coming down the river, and the river was high, making the passage of the channel span very dangerous, especialy for coal boats, But the obstruction was clearly placed there in violation of the condition upon which the improvement was permitted, and it was not only so placed, but it was permitted to remain there after it was ordered removed by the United States army officer in charge of the Ohio river at that point.
It follows that unless the plaintiff was guilty of contributory negligence, it must recover. Having no knowledge of the obstruction and no reason to believe that the span would be obstructed, it was undoubtedly the du^yof the officers of the Rescue to place the boat in a position to run span No. 5, and this they did; and it being practically admitted tnat as soon as the officers in charge of the Rescue discovered the obstruction in span No, 5, theyTlid all in their power to run the channel span, the only span open to them, there *426 remains but one question to be considered, and that is, whether it was negligence in the officers in not discovering the obstruction in span No. 5 in plenty of time to have placed their boat in a position to run the channel span.
On this question the court charged the jury as follows:
“If you find that those in charge of the ‘Rescue’ could have seen the obstructions in span 5 in ample time to have steered for the channel span,and said channel span was open for navigation, but failed to so discover them, the presumption is that they were guilty of negligence, and unless this presumption is removed the plaintiff can not recover’’
And again:
“If the people in charge of the Rescue and her tow could have seen the condition of span No. 5 in time to have steered a proper course for the Ohio channel span, and said Ohio span was open for navigation, there can be no recovery and your verdict must be for the defendant.”
Other portions of the charge are to the same effect.
There being, virtually, no question but what the officers of the Rescue could have .seen the obstructions in span No. 5 if they had looked for them, and there being no question but what the Ohio span or channel span was open for navigation to a certain extent, although extremely dangerous, the jury could do nothing but return a verdict for the defendant.
In charging the jury as above we think the court was in error. The general principle deducible from these charges would be that one is in duty bound to look out for the negligence of others even under circumstances where negligence on the part of others it would be uunreasonable to expect.
In the case of Driscoll, Adm’r, v. The C. W. & B. Ry. Co., 1 C. C., 495, this court said: “Driscoll was on the tracks of the defendant at a point where as a matter of right he had no right to be.” (He was walking on the track of the railway company). “The only obligation that the company was under to him was that they had no right to wilfully injure him, which would include the duty they owed to him, if the engineer after he had seen the imminent danger he was in had not done all in his power to prevent any harm to him; but the company had the right to *427 run its trains at this point totally regardless of the possible presence of the decedent. They owed him no obligation to look out for his safety. They had the right to rely on his' using his senses and keeping out of the way of their trains. They owed him no obligation to see him on the’ track and warn him of danger. It was his duty to look out for the train and avoid danger. He was under obligations to use his senses of seeing and hearing, If after he had placed himself in this perilous position and the person having-charge of the engine had seen him and had at the time great reason to believe that the decedent would not get out of the way and was not using his senses, or could not, it was then the duty of the engineer to do all in his power to prevent the injury. This was he only duty owing to the decedent, and the failure to have used it would have amounted to wilfullness, but there was not a particle of evidence that tends in the least to show any such negligence as this on the part of the defendant.”
The principle of law announced in that case it seems to us is applicable here. The officers of the Rescue had no reason to think that span No. 5 would be closed to navigation. The bridge company in closing it at the time it did, violated the orders of the secretary of war and the United State officer in charge of the Ohio river at this point. Besides the high water and the great danger of running the-channel span at the time made it necessary for the coal fleet to run span No. 5, and it was certainly negligence on the part of the bridge company, aside from the conditions imposed upon it in the reconstruction of the bridge that no-other span should be obstructed while the channel span was obstructed, or obstruct it at this time.
If the officers of the Rescue had no knowledge of the obstruction and no reason to think that it would be obstructed, what duty rested on them to look to see if it was obstructed? Certainly none.
It must be that the officers of boats running on the river-are bound to look out for the dangers of navigation, but it cannot be that an unlawful obstruction of navigation by one not engaged in navigation can be considered as an ordinary danger of navigation.
If the officers of the Rescue had known of this obstruct *428 ion,or had reason to believe that the span would be obstructed, it would have been negligence on their part to have placed the boat in a position to run channel No. 5 without first observing whether the obstruction was there. This is in accord with-the law as announced in the case of Coal Company v. Estievenard, 53 Ohio St., 43. But riot having such knowledge, it was plainly their duty to place their boat in position to run span No, 5, for the channel span was obstructed and dangerous, and span No 5 was not dangerous to' run, it virtually being under the circumstances the channel span. Having done this, the only duty on them was to properly run this span so as to avoid collision with the piers on either side and such boats or other craft that might be there at the same time.
Counsel for the bridge company rely on the case of the Railroad Company v. Transportation Company, 32 Ohio St., 116, but we do not think the case is in point. A part of the syllabus in that case is as follows:
‘‘4, Although prudence dictates that a vessel, left during the night in the usual route of passing craft, should display a light aB a signal of warning to others, yet, when such vessel is moored out of the usual path of navigation, where boats rarely, if ever, come, and in a place where the bridge work was going on from day to day, such work, at times, necessitating a temporary closing of the passage way altogether, the absence of a light upon a vessel so circumstanced is not necessarily negligence.”
”6. When a pilot leaves the usual and customary channel of navigation, that fact requires an increased amount of care on his part to avoid the danger attending the new risks he undertakes. If, in pursuing such a course, he encounters a collision, it is not a sufficient justification for him to show that he exercised that ordinary care proper in the usual and ordinary course of navigation.”
In the case at bar the obstruction was placed in the channel, which owing to the obstructions which had been placed in the channel span, thereby making it exceedingly dangerous to navigation, was the usual and proper channel to use, and it was well known to be such to the bridge company and to boatmen. It was certainly negligence on the part of the bridge company to obstruct it, and it could not *429 be negligence on the part of the officers of the boat not to •observe such negligence. They had the right to approach this span relying on it being free and open for the passage •of boats, and they were not bound to see the obstruction in time to have avoided it. If they knew it was there before the day of the accident, or saw it on the day of the accident in time to have steered for the channel span, it was their •duty to do go, but these questions were not left to the jury. In stating the law as the court did in the portions of the ■charge supra and other parts of the charge, to the same «ffect we think the court took a wholly erroneous view of the ■duty imposed on the plaintiff below, and the judgment must be reversed and cause remanded for further proceedings.
Stevens Lincoln, for Plaintiff in Error.
Maxwell, Ramsey & Ramsey for Defendant in Error.